IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2006 Session

## MARC ESKIN, ET AL. v. ALICE B. BARTEE, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-006445-03     The Honorable Karen R. Williams, Judge**

_____

**No. W2006-01336-COA-R3-CV - Filed December 27, 2006**

_____

Parents, individually and on behalf of their two minor children, sued various defendants for damages resulting from an automobile accident caused allegedly by the negligence of defendants. The complaint, in addition to seeking damages for the personal injuries sustained by one of the minor children, seeks damages on behalf of the mother and one minor child for negligent infliction of emotional distress. An uninsured motorist insurance carrier filed an answer in the cause and subsequently moved for summary judgment, which ostensibly involved only the claims for negligent infliction of emotional distress. The trial court granted the summary judgment motion but failed to denote that the grant was only a partial summary judgment for that particular claim. We modify the trial court's order by granting only a partial summary judgment and further reverse and remand that grant.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Modified, Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. joined and HOLLY M. KIRBY, J., concurs separately.

J. Houston Gordon of Covington, Tennessee; Irma W. Merrill-Stratton of Memphis, Tennessee for Appellants, Marc Eskin and Karen Eskin, each individually and as parents and next friends to Brendan Eskin, a minor, and Logan Eskin, a minor

Warren D. McWhirter of Memphis, Tennessee for Appellee, USAA Casualty Insurance Company

**OPINION**

Marc Eskin and Karen Eskin are the parents of Logan Eskin (together with Marc Eskin and Karen Eskin, the "Eskins," "Plaintiffs," or "Appellants") and Brendan Eskin. On November 19, 2002, Brendan Eskin was a student at Chimney Rock Elementary School ("Chimney Rock"). Chimney Rock has separate waiting areas for children who ride buses and for children who ride in

cars. On November 19, 2002, Brendan Eskin was standing in the car area waiting for his ride home. That day, Mrs. Eskin had asked her neighbor, Jan Durban, to pick Brendan up from school. As Brendan was waiting, Alice B. Bartee lost control of her vehicle and struck Brendan. Ms. Bartee's car knocked Brendan to the pavement and ran over him. Ms. Bartee's vehicle also struck other children as she drove onto the sidewalk and finally struck the school building.

Immediately following the accident, Mrs. Eskin received a phone call from Ms. Durban. Ms. Durban told Mrs. Eskin that Ms. Durban's vehicle had been struck from the rear and that Brendan had been "hurt". Ms. Durban's tone and statement led Mrs. Eskin to believe that there had only been a minor accident and that there were no serious injuries. Mrs. Eskin told Ms. Durban that she was on her way to the school. Mrs. Eskin immediately drove the short distance to the school. She took Logan, Brendan's youngest brother, his sister, and another child who was visiting Logan.

Upon arriving at Chimney Rock, Mrs. Eskin parked and walked, with the children, to the front of the school. As she came upon the accident scene, she saw Brendan lying unconscious on the pavement in a pool of blood. Mrs. Eskin immediately tried to go to her son's side but was kept from doing so. Logan Eskin also witnessed his brother in this state. At the time Mrs. Eskin and Logan arrived at the scene, Brendan had received no medical intervention and was lying in the position he fell after being hit by Ms. Bartee's vehicle.

On November 17, 2003, Marc and Karen Eskin, in their individual capacities and as representatives and parents of their minor children, Brendan Eskin and Logan Eskin, filed a Complaint against Alice B. Bartee, Robert A. Eng, Fawn P. Cress-Eng and the Shelby County Board of Education (together the "Defendants"). Shelby County was also named as a defendant in the case but has been dismissed with prejudice. In their Complaint, the Eskins seek, *inter alia*, damages for severe emotional injuries to Karen Eskin and Logan Eskin caused by the Defendants' negligence and suffered by them when they came upon the accident scene and witnessed Brendan lying on the pavement, unattended, in a pool of blood. The Eskins served the Complaint on their own insurance carrier, USAA Casualty Insurance Company ("USAA," or "Appellee") under Tennessee's Uninsured Motorist Statute because Ms. Bartee was uninsured.

On October 5, 2004, USAA filed an Answer to the Complaint in which it asserts, *inter alia*, that the Eskins had failed to state a claim upon which relief can be granted. On or about July 11, 2005, USAA filed a Motion for Summary Judgment. We note that the Motion does not "state with particularity the grounds therefore" as required by Tenn.R.Civ.P. 7.02(1). However, in its memorandum of law in support of the Motion, USAA specifically asserts that:

> 1. A Tennessee plaintiff cannot recover against a defendant for negligent infliction of emotional distress when she was not present at the time of injury to a third person and did not observe the accident occur through one of her senses.

2. Plaintiffs Karen Eskin and Logan Eskin cannot recover for negligent infliction of emotional distress because they were neither present when Brendan Eskin was injured nor did they make any sensory observation of Brendan Eskin being injured.

The Eskins opposed USAA's motion for summary judgment and, on or about November 22, 2005, filed the Affidavit of Karen Eskin, a response to USAA's statement of undisputed material facts, and a memorandum of law in support of their position.

The motion for summary judgment was heard by the trial court on December 9, 2005. On February 17, 2006, the trial court entered its Order granting the motion for summary judgment in favor of USAA. The Order states:

> This cause came on to be heard on December 9, 2005. Based upon Memoranda submitted in the cause, case law cited by Counsel, argument of Counsel and the entire record as a whole, the court finds that the Motion for Summary Judgment filed by USAA Casualty Insurance Company is well taken and should be granted. This cause shall remain unaffected as to the remaining Defendants.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion for summary Judgment of USAA Casualty Insurance Company should be and is hereby granted, and USAA Casualty Insurance Company is hereby dismissed with prejudice. This Order shall be a final Order as contemplated by Rule 54.02 of the Tennessee Rules of Civil Procedure, the Court finding that there is no just reason for delay. Court costs shall abide further Order of the Court.

Although the grant of summary judgment appears to be a full summary judgment for USAA, it is noteworthy that the trial court specifically stated in the Order that "this cause shall remain unaffected as to the remaining defendants." Obviously, service of process on the insurance company under the uninsured motorist coverage would be equally applicable to claims made in the complaint by the other plaintiff, and most specifically Brendan Eskin. The record is quite clear that the parties contemplated a motion for summary judgment dealing only with the claims of Karen Eskin and Logan Eskin for the negligent infliction of emotional distress clam. Moreover, the Order of the trial court dealt only with the motion as filed and submitted to the court. Under these circumstances, the order should be and is hereby amended to grant only a partial summary judgment to USAA Casualty Insurance Company for the claims of negligent infliction of emotional distress.

That being said, we turn now to the issues raised by the Eskins, as stated in their brief:

1. Whether a Tennessee plaintiff can recover for negligent infliction of emotional distress as a result of injuries to another when, although not present when the injury occurred, the plaintiff came upon the scene immediately after the incident and "sensorially observed" the injuries to the close family member.

2. Whether the facts of this case present a jury question allowing the plaintiffs to establish that their loved one's injuries and the plaintiffs' resulting emotional injuries were proximate and foreseeable results of the defendant's negligence.

3. Whether Tennessee allows recovery for emotional trauma caused by witnessing the aftermath of the injuries in all of their alarming details and sensorially observing a loved one's injuries at the accident scene.

4. Whether the Tennessee Supreme Court's rejection of the rigid analysis requiring an "overly formulaic" approach of earlier cases and adoption of the general negligence approach requiring "sufficient proximity to the injury causing event" allows recovery to an individual who, although not present when the horrific injuries occurred to their loved one, "sensorially observed" those injuries moments later at the scene before the loved one is moved.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists*. See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must them demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

In the instant case, the uninsured motorist carrier contends that Plaintiffs cannot recover against the Defendants for negligent infliction of emotional distress when the Plaintiffs did not observe the injury-producing accident. Plaintiffs, however, contend that it is not absolutely essential that a plaintiff actually observe the injury-producing accident. Rather, Plaintiffs assert that, if it is foreseeable that a plaintiff, coming upon the scene of an accident immediately after the incident, will observe the condition of the injured person, then that plaintiff may recover damages for negligent infliction of emotional distress. The issue presented by these divergent contentions is the issue involved in this appeal.

In *Camper v. Minor*, 915 S.W.2d 439 (Tenn. 1996), the Court abandoned the requirement of physical manifestation, or injury rule, and held that cases claiming negligent infliction of emotional distress should be analyzed under the general negligence approach. "In other words, the plaintiff must present material evidence as to each of the five elements of general negligence– duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause . . . in order to avoid summary judgment." *Id.* at 446. The Court went on to say that the law should provide a recovery only for "serious" or "severe" emotional injuries, which the Court defined as injuries "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 446. The Court concluded that the claimed injury must be supported by expert medical or scientific proof. *Id.*

Later the same year, our Supreme Court again considered a case involving negligent infliction of emotional distress. In *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996), the Court had before it a case where a son sued a defendant stating a claim for negligent infliction of emotional distress when the defendant went off the road and struck his mother, killing her instantly. The plaintiff-son witnessed his mother being struck by the defendant's vehicle but was not in immediate threat of physical harm, i.e., not within the "zone of danger." The *Ramsey* Court noted that "rather than focusing on subjective statements of fear or surmised conclusions of whether one's physical location is within the zone of danger, we hold that in the future, liability shall be determined by application of general negligence law as set forth in this Opinion." *Ramsey* at 531. Specifically, the *Ramsey* Court stated:

> We, therefore, hold that to recover for emotional injuries sustained as a result of death or injury of a third person, plaintiff must establish that defendant's negligence was the cause in fact of the third person's death or injury as well as plaintiff's emotional injury. Secondly, plaintiff must establish that the third person's death or injury and

plaintiff's emotional injury were proximate and foreseeable results of defendant's negligence.

Establishing foreseeability, and therefore a duty of care to plaintiff, requires consideration of a number of relevant factors. The plaintiff's physical location at the time of the event or accident and awareness of the accident are essential factors. Obviously, it is more foreseeable that one witnessing or having a sensory observation FN2 of the event will suffer effects from it. As has been explained:

> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.

*Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 879, 771 P.2d 814, 828 (1989). Thus, plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff.

> FN2. The term "sensory observation" is used to allow, under circumstances in which all prerequisites are met, recovery by one who either does not or cannot visually observe the event, but observes the event by some other sense, such as audibly.

*Id.* at 531.

The Court went on to discuss other factors, such as degree of injury to the third person and the plaintiff's relationship to the third person, none of which are issues involved in this appeal.

In the instant case, dealing with summary judgment, Mrs. Eskin's Affidavit concerning the facts is undisputed. She was notified that there had been a minor accident at her son's school, and she was on her way to pick up her son. She got to Chimney Rock immediately after the accident, observed her son unattended in the same position as he fell after being struck by the vehicle. In short, it is undisputed that the Plaintiffs arrived at the scene immediately after the accident and observed the same scene that the Plaintiffs would have observed had they been present when the accident actually occurred. The *Ramsey* Court held that a "plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff." *Id*. at 531. We believe that the Plaintiffs have produced evidence of sufficient proximity to the injury-producing

event.  Moreover, the Plaintiffs certainly had sensory observance of the condition of their son and brother.  Under the particular factual situation presented by the record in this case, it is apparent that a person can happen upon an accident immediately after it occurs and perceive a horrible situation that could produce emotional distress at least equal to that produced by observing the injury-producing event as it occurs.

One can imagine various scenarios analogous to the situation in the present case.  For instance, a mother could be out with her child or children walking, with the children running ahead playing.  Upon reaching the corner, the children turn the corner and while they are out of the sight of the mother, one of the children is struck by a car that jumps the curb.  The child is seriously and critically injured, and the mother turns the corner and comes upon the scene.  The mother did not sensorily observe the injury-producing event, but she certainly observed the injury that caused her to have the distress.  Perhaps a more logical scenario, and one that occurs on many occasions, could involve a family on an automobile trip traveling in two vehicles.  The lead vehicle is involved in an accident, although out of sight of the second vehicle.  The second vehicle arrives on the scene of the accident immediately after the accident occurs, and the occupants of the second vehicle observe the carnage created by the accident.  Assuming that the other factors required for negligent infliction of emotional distress are present, we see very little, if any, difference between the actual observance of the injury producing accident and observing the result of the injury producing accident immediately after it occurs.  It certainly seems to be foreseeable that there could be situations such as this, and the *Ramsey* Court's quotation from *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 879, 771 P.2d 814, 828 (1989), *see supra,* set out above indicates that the Court was not establishing a bright line rule that there must be actual observance of the injury producing accident. It appears the Court recognized that there may be circumstances where sensory observance of the injury-producing event is not an absolute essential element.

Other jurisdictions have not been uniform in their decisions regarding this particular factor. The Supreme Court of Washington in *Hegel v. McMahon*, 136 Wash.2d 122, 960 P.2d 424 (Wash. 1998), discussed the diverse views held by various jurisdictions.  The Court said:

> Other jurisdictions have developed a wide spectrum of rules to define liability for negligent infliction of emotional distress. Alaska has allowed a mother to bring a claim where she saw her injured daughter at the hospital after the accident. *See Beck v. State Dep't of Transp. & Pub. Facilities*, 837 P.2d 105 (Alaska 1992). Maine holds that a defendant is only liable for emotional distress that arises when parents actually witness their child receiving an injury. *See Cameron v. Pepin*, 610 A.2d 279, 284 (Me.1992). Connecticut and Wyoming have adopted a principled intermediate approach which limits the scope of liability, yet still allows recovery to those plaintiffs who witness their relative's injuries at the scene of an accident. These states recognize *132 a cause of action where a plaintiff witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is material change in the attendant circumstances. *See*

> ***Clohessy v. Bachelor***, 237 Conn. 31, 675 A.2d 852 (1996); ***Gates v. Richardson***, 719 P.2d 193 (Wyo.1986). This rule addresses the concerns over limitless liability by allowing recovery only to the class of claimants who are present at the scene before the horror of the accident has abated. It dispenses with the arbitrary requirement that a plaintiff actually witness the accident, yet preserves the limitation on liability established in Gain. The critical factors are the circumstances under which the observation is made, and not any rigid adherence to the length of time that has passed since the accident.

***Id.*** at 429.

The Washington Court was considering two cases consolidated for disposition, both of which involved family members that arrived at the scene of the accident and saw their loved ones as they existed in the aftermath of the injury producing accident. The Court, in a very reasoned opinion, adopted the approach of the Connecticut and Wyoming Courts, set out above, and held:

> [A] family member may recover for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location. Applying this rule to the facts of these cases, we conclude that it was improper for the lower courts to dismiss the Plaintiffs' claims for negligent infliction of emotional distress. Because Plaintiffs in both cases were present at the scene, and may have witnessed their family members' suffering before there was a substantial change in the victim's condition or location, their mental distress was not unforeseeable as a matter of law.

***Id***. at 429-30.

In light of the apparent recognition by the ***Ramsey*** Court that the sensory observance of the injury producing event is not an absolute essential element, we adopt the holding of the Washington Supreme Court quoted above. Each case must be considered on its particular facts and under general negligence rules.

The Concurring Opinion in this case goes into great detail concerning the opinion of the California court in ***Thing v. La Chusa***, 771 P.2d 814 (Cal. 1989). The majority does not disagree with the Concurring Opinion as to the facts of ***Thing*** or the particular holding of ***Thing.*** What is important, however, is the fact that ***Thing*** established a bright-line rule that a plaintiff could not recover for negligent infliction of emotional distress unless the plaintiff was present at the injury-producing event at the time it occurred and was aware at that time that it was causing injury to the victim. ***Id.*** at 829-30. The ***Ramsey*** court, in considering ***Thing***, did not quote or otherwise refer to the holding in ***Thing*** and confined its discussion of ***Thing*** to recognize that there were situations

where the emotional distress could be as great even though one did not observe the injury-producing event. In *Ramsey*, the Court specifically stated that "plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff." *Ramsey*, 931 S.W.2d at 531. The *Ramsey* court could have, by adopting the ruling of the California court, established a bright line rule that actual observance of the injury-producing event was a necessary element of negligent infliction of emotional distress. The *Ramsey* court did not do this and reiterated that general negligence rules would control the cause of action based on negligent infliction of emotional distress. The court concluded that a plaintiff "may nonetheless suffer compensable mental injury as a result of injuries to a closely related third person which plaintiff observes sensorily." *Ramsey*, 931 S.W.2d at 532.

Therefore, the order of the trial court is modified to grant summary judgment only on the claims of Marc Eskin and Karen Eskin for negligent infliction of emotional distress, and the order in its entirety is reversed. The case is remanded to the trial court for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed against USAA Casualty Insurance Company, and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.